[Civ. No. 284.    Second Appellate District.—July 31, 1906.]

## FRANCIS B. GUTHRIE, Respondent, v. SUPREME TENT KNIGHTS OF MACCABEES OF THE WORLD, Appellant.

MUTUAL BENEFIT SOCIETIES—ENDOWMENT FUND—CONTRACT FOR ONE-HALF AT AGE OF SEVENTY NOT ULTRA VIRES.—Where the articles of association of a mutual benefit corporation provided for a benefit fund for each of its members payable to beneficiaries at death, and in case of total and permanent disability, such as may be designated in its endowment laws, which provided that "a total and permanent disability to perform any kind of labor or business, or upon reaching the age of seventy years shall entitle a member holding a certificate of endowment, so disabled or aged, to the payment of one-half of the endowment to which he would be entitled at death," the contract to pay such half to a member so aged is not void as being *ultra vires.*

ID.—REASONABLE CONSTRUCTION OF CONTRACT—BY-LAWS.—"OLD-AGE DISABILITY"—CONCLUSIVE PRESUMPTION.—The contract is to be reasonably construed, in connection with the by-laws of the corporation, in which are found provisions as to "old-age disability," with reference to the intent that seventy years should be a conclusive evidential fact of "permanent disability," that "total and permanent disability" was the event which matures the claim to one-half the fund, and that the seventy years was but a term employed as establishing by agreement an age at which such condition was conclusively presumed to exist.

ID.—GENERAL POWER TO CONTRACT FOR PAYMENT UPON DISABILITY—MANNER OF EXERCISE—ESTOPPEL.—The general power having been conferred upon the corporation by its charter to contract for a sum to be paid in case of "total and permanent disability," the corporation is estopped to claim *ultra vires,* when only the manner of the exercise of such power is involved.

ID.—SUBSEQUENT CHANGES IN ENDOWMENT LAWS—PROSPECTIVE EFFECT. Where nothing appears in the contract or record to show an intention

to reserve to the association the power to alter or modify the contract of endowment, subsequent changes in the endowment laws, providing for a low payment, are deemed prospective, where no executed parol agreement for modification thereof is shown or implied.

ID.—ABSENCE OF PRESUMPTION OF CONSENT—IGNORANCE OF CHANGE—CONSTRUCTIVE NOTICE UNDER STATUTE.—There can be no presumption of consent to the modification of the contract by failure to act after notice of the change, where it appears that the plaintiff had no knowledge of such change, or of defendant's intention to dispute his claim by contract for one-half payment at seventy years of age; and so far as constructive notice is concerned, the notice by statute that no by-law could be changed affecting plaintiff's rights operated as an assurance that no changes in by-laws were intended to affect his vested rights to benefits due him from membership.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

Frank James, D. D. Aitken, and De Vere Hall, for Appellant.

The contract to pay one-half of the endowment to plaintiff at the age of seventy, was without power and void. (*Walker* v. *Commissioner of Insurance*, 103 Mich. 344, 61 N. E. 512; *Calkins* v. *Bump*, 120 Mich. 336, 79 N. W. 491; *Mutual Benefit Assn.* v. *Hoyt*, 46 Mich. 473, 9 N. W. 497; *Lyon* v. *Rolfe*, 76 Mich. 146, 42 N. W. 1094; *Metropolitan etc. Co.* v. *O'Brien*, 92 Mich. 584, 52 N. W. 1012; *Goss* v. *Peters*, 98 Mich. 112, 57 N. W. 28; *Rockhold* v. *Canton Mut. etc. Soc.*, 129 Ill. 440, 21 N. E. 794, 19 N. E. 710, 2 L. R. A. 420.)   A contract which is *ultra vires* in the proper sense is incapable of ratification, and can create no estoppel. (*Steele* v. *Fraternal Tribunes*, 215 Ill. 190, 74 N. E. 121; *Wood* v. *Mystic Circle*, 212 Ill. 532, 72 N. E. 783; *National Home etc. Assn.* v. *Home Sav. Bank*, 181 Ill. 35, 72 Am. St. Rep. 245, 54 N. E. 619, 64 L. R. A. 399; *Durkee* v. *People*, 155 Ill. 354, 46 Am. St. Rep. 340, 40 N. E. 626; *Metropolitan Exch.* v. *Lyndonville Nat. Bank*, 76 Vt. 303, 57 Atl. 101; *Andrews* v. *Minn. Mut. F. Ins. Co.*, 37 Me. 257; *Dresser* v. *Traders' Bank*, 165 Mass. 120, 42 N. E. 567; *Pullman*

*Car Co.* v. *Central Trans. Co.,* 139 U. S. 62, 11 Sup. Ct. 489; *California Sav. Bank* v. *Kennedy,* 167 U. S. 367, 17 Sup. Ct. 831; *Concord etc. Bank* v. *Hawkins,* 174 U. S. 370, 19 Sup. Ct. 739; *Montgomery* v. *Whitbeck,* 12 N. Dak. 385, 96 N. W. 327; *San Diego Water Co.* v. *San Diego,* 59 Cal. 517; *Orr* v. *Lacey,* 2 Doug. (Mich.) 230; *Pennsylvania Nav. Co.* v. *Dandridge,* 8 Gill. & J. (Md.) 248, 29 Am. Dec. 543; *Abbott* v. *Baltimore etc. Co.,* 1 Md. Ch. 542.) There can be no vested rights under a void contract. (*New Orleans* v. *New Orleans Water Co.,* 142 U. S. 79, 12 Sup. Ct. 142; *Ochiltree* v. *Railroad Co.,* 21 Wall. 249; *Railroad Co.* v. *Falconer,* 103 U. S. 821; *Norton* v. *Brownville,* 129 U. S. 479, 9 Sup. Ct. 322.) Defendant could modify its provisions. (*Hutchinson* v. *Supreme Tent Order of Maccabees,* 68 Hun, 355, 22 N. Y. Supp. 801; *Blasingame* v. *Royal Circle,* 111 Ill. App. 202; *Supreme Lodge* v. *Katscher,* 179 Ill. 340, 70 Am. St. Rep. 115, 53 N. E. 620; *Supreme Lodge* v. *Knight,* 117 Ind. 489, 20 N. E. 479; Noblack on Benefit Society, 24; Bacon on Benefit Societies, 3d ed., sec. 81.) Failure to protest against charge would bind the plaintiff. (*Supreme Council* v. *McAlarney,* 135 Fed. 72; *Supreme Council* v. *Lippincott,* 134 Fed. 824; *Pokrefky* v. *Detroit etc. Assn.,* 131 Mich. 38, 90 N. W. 689, 96 N. W. 1057; *Clymer* v. *Supreme Council,* 138 Fed. 471.)

E. M. Guthrie, for Respondent.

The defense of *ultra vires* should not be sustained. (*Sheehan* v. *Journeymen Butchers' Assn.,* 142 Cal. 499, 76 Pac. 238; *Argenti* v. *San Francisco,* 16 Cal. 264; *Union W. Co.* v. *Murphy's F. F. Co.,* 22 Cal. 621; *Main* v. *Casserly,* 67 Cal. 127; *Blood* v. *La Serena Land Co.,* 134 Cal. 367, 66 Pac. 317; *Kennedy* v. *California Sav. Bank,* 101 Cal. 495, 40 Am. St. Rep. 69, 35 Pac. 1039; *Gruber* v. *Grand Lodge,* 79 Minn. 59, 81 N. W. 745; *Bissell* v. *Michigan & S. T. R. R. Co.,* 22 N. Y. 259; *Kent* v. *Quicksilver Min. Co.,* 78 N. Y. 186; *Bath Gas Light Co.* v. *Claffy,* 151 N. Y. 24, 45 N. E. 390.) Where the contract has been performed on the part of plaintiff, the defense of *ultra vires* is not tenable. (*Darst* v. *Gale,* 83 Ill. 141; *Bloomington Ben. Assn.* v. *Blue,* 120 Ill. 128, 60 Am. Rep. 558, 11 N. E. 331; *Heims' Brewing Co.* v. *Flannery,* 137 Ill. 318, 27 N. E. 286; *Wright* v. *Hughes,* 119 Ind. 324, 12 Am. St. Rep. 412, 21 N. E. 907; *Gruber* v. *Grand Lodge,* 79 Minn. 59,

81 N. W. 745; *Thompson* v. *Lambert,* 44 Iowa, 245; Beach on
Private Corporations, secs. 424, 425; *Denver Fire Ins. Co.* v.
*McClellan,* 9 Colo. 11, 59 Am. Rep. 134, 9 Pac. 771; *Dewey* v.
*Toledo etc. R. R. Co.,* 91 Mich. 351, 51 N. W. 1062; *Butter-
worth & Lowe* v. *Kritzer M. Co.,* 115 Mich. 1, 72 N. W. 990;
Herman on Estoppel, 1318.)   A by-law cannot change vested
rights.   (*Kent* v. *Quicksilver M. Co.,* 78 N. Y. 182; *Newhall* v.
*Supreme Council,* 181 Mass. 111, ˚63 N. E. 1; *Seiverts* v.
*National Ben. Assn.,* 95 Iowa, 710, 64 N. W. 671; *Morton* v.
*Supreme Council,* 100 Mo. App. 76, 73 S. W. 264; *Strauss* v.
*Mut. Reserve etc. Assn.,* 126 N. C. 971, 128 N. C. 465, 83 Am.
St. Rep. 699, 54 L. R. A. 605, 36 S. E. 352, 39 S. E. 55;
*Gaut* v. *Supreme Council,* 107 Tenn. 603, 55 L. R. A. 465, 64
S. W. 1070; *Bragaw* v. *Supreme Lodge,* 128 N. C. 354, 54 L.
R. A. 602, 38 S. E. 905; *Wright* v. *Knights of Maccabees,* 48
Misc. Rep. 558, 95 N. Y. Supp. 996; *Becker* v. *Farmers' Mut.
F. Ins. Co.,* 48 Mich. 611, 12 N. W. 874; *Pokrefky* v. *Detroit
Fireman's Assn.,* 121 Mich. 456, 80 N. W. 240; *Becker* v. *Ber-
lin Ben. Soc.,* 144 Pa. St. 232, 27 Am. St. Rep. 624, 22 Atl.
699.)

ALLEN, J.—Action upon a written agreement.   Judgment
for plaintiff and an order denying a new trial, from which
judgment and order defendant appeals.

The defendant is a corporation created under a legislative
act of the state of Michigan, which authorized the incorpora-
tion of associations for certain purposes, among which were
that of " . . . securing a certain sum of money weekly or
monthly to any member disabled by sickness or other disa-
bility."   The act required that persons desiring to form such
associations must file in certain public offices articles of asso-
ciation, which, among other things, should state the business
of the corporation and the terms and conditions of member-
ship.   The act further provided that the trustees of such
association named in the articles should adopt by-laws, but
that no by-laws adopted affecting the rights and benefits be-
longing to or to be derived by the members of such corporation
should be changed by such trustees.   Pursuant to this act
certain persons, in the year 1885, filed with the proper
officers the articles of association described, defining the pur-
poses of the association, among other things, to be to give
material aid to its members; to establish a benefit fund or

funds from which, on satisfactory evidence of the death or disability of a member who has complied with all its lawful requirements, the sum of two thousand dollars, in case of death, shall be paid to his family, orphans, dependents, or legal heirs, as such member may direct; and in the case of total or permanent disability, such sum as may be designated in the endowment laws of such corporation. One of these endowment laws provides: "A total and permanent disability to perform or direct any kind of labor or business, or upon reaching the age of seventy years, shall entitle a member holding a certificate of endowment, so disabled or aged, to the payment of one-half of the endowment to which he would be entitled at death, provided, however, that in case of a total and permanent disability, satisfactory proofs must be submitted to the supreme medical examiner and board of trustees before payment is made, showing that such disability is permanent; and that it did not arise from his voluntary act, or from intemperance or any immoral or unlawful conduct on his part, or from the violation of the laws of the country, and provided, further, that the member shall have paid all dues and assessments from date of initiation to date of disability, or upon reaching seventy years of age. From the date of such payment such member shall only pay pro rata or one-half as much at each assessment as prior thereto. On the death of such member his heirs or assigns shall receive his endowment, less the amount which may have been paid as provided above."

Plaintiff, during the year 1885, when this act and the by-laws and regulations above mentioned were all in force, became a member of the defendant, and there was issued to him a certificate of membership, which certified that he was a member and a beneficiary in good standing, and that in accordance with and under the provisions of the laws governing the order, he is entitled to receive one assessment on the membership, not exceeding in amount the sum of $2,000, as a benefit to his daughter, upon satisfactory proof of his death and a surrender of the certificate, provided he shall have, in every particular, complied with all the rules and regulations of the order. In case of total or permanent disability, or upon attaining the age of seventy years, he will be entitled to receive one-half of the said endowment, as provided in the laws of the order. Under this agreement plaintiff continued the payment of all dues and performed all obligations devolving upon him

thereunder; and in the year 1905, when he arrived at the age of seventy years, claimed payment of one-half of the endowment; and upon defendant's refusal to pay, instituted this action.

It appears from the record that after this certificate was issued, without the consent or agreement upon plaintiff's part, the by-law hereinbefore referred to was changed in material respects, notably that instead of paying $2,000 when permanent disability should ensue, the defendant would pay ten per cent of the endowment fund annually during the existence of such permanent disability.

It is found by the court that plaintiff and defendant both believed, when the certificate was issued, that the corporation possessed the power to issue the same in the manner of its issuance, and to enter into the contract thereby made, and that plaintiff, without knowledge on his part that want of authority so to do was claimed by defendant, paid and defendant received, during the twenty years of his membership, all dues and assessments levied or assessed against him. The court further finds that plaintiff had no actual notice of any cnanges in the by-laws affecting his rights. The trial court also finds that the defendant corporation, from its organization up until 1899, provided for the payment of benefits to it members when they reached the age of seventy years; and further, that assessments had been made and funds existed out of which plaintiff's claim was payable, and that he was entitled under his contract to receive one thousand dollars, with interest from February 15, 1905, and the sum of six dollars, assessments overpaid; for which it rendered judgment.

Defendant's principal contention upon this appeal is, that the contract sued upon was *ultra vires* and void; that the stipulation therein that payment should be made at the age of seventy years was not authorized by the act under which the association was formed; and in support of this contention cites as authority certain decisions of the supreme court of Michigan, construing a similar act, in which it was held that a contract to pay a stipulated sum in a hundred months was *ultra vires* and void; and cites other authorities in support of the proposition that if the contract is *ultra vires* the corporation is not estopped to deny its character. This last proposition is a much controverted one, and the converse thereof

has been held by our own supreme court in numerous cases. We are of opinion, however, that this question is not necessarily involved upon this appeal; for it is not apparent from the language of the agreement that want of authority existed.

Section 1643 of the Civil Code of this state provides: "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties"; and section 3541, Civil Code, provides that, "an interpretation which gives effect is preferred to one which makes void." The contract involved in this case is susceptible of two constructions: One that a payment is absolutely due when the age of seventy years is attained; the other, that payment is due when permanent and total disability ensues, and that the attainment of seventy years is an evidential fact of such permanent and total disability. Our general government, in its administration of the pension laws of this country, has, through its duly authorized officials, promulgated a rule based upon a statement that old age is an infirmity, the average nature and extent of which the Pension Bureau has established with reasonable certainty, that in the adjudication of pension claims which are payable on account of disability, "it shall be taken and considered as an evidential fact, if the contrary does not appear, and if all other legal requirements are properly met, that when a claimant has passed the age of . . . seventy years," he is entitled to the full pension for total disability. That this contract was made with reference to the intent that seventy years should be a conclusive evidential fact of permanent disability is obvious from the by-law of the corporation, adopted a fortnight before the statute was amended, in which is found provisions with regard to *old age disability* as distinguished from disability arising from other causes, and further provisions in relation to permanent disability benefits, whether the same were from disease, accident, or old age, and that disability claimed before such age must be established by proof; and we think that a reasonable and proper construction of this contract, one which will give it effect and carry out the intention of the parties, is to say that, under this contract, total and permanent disability was the event which matured the claim, and that the seventy years mentioned therein was but a term employed as establishing by agreement an age when such condition was con-

clusively presumed to exist.  This construction was not permissible in the cases before the supreme court of Michigan, and in many other cases referred to by counsel for appellant, for in those cases the sum was payable within nine years from the issuance of the certificate, regardless of age or the physical condition of the member, and it was apparent that the intent was to make the expiration of a fixed time the event which should mature the claim, and not disability, total or partial.    Entertaining these views, we are led to the conclusion that the act authorizing the payment of a sum when disability should arise, even though it limited such payment to monthly or weekly sums, is sufficient warrant, coupled with the other provisions of the act relative to the articles of association, and the by-laws authorized, to render this contract within the powers of the corporation.    Certain it is that the power to contract with reference to a payment upon disability is given, and none of the authorities cited go to the extent of determining that where the general power to do the act is given, a corporation is not estopped when the manner of the exercise of the power only is involved.

Appellant next contends that the subsequent changes in the endowment laws had the effect to alter and vary this contract.    We find nothing in the contract or record which would indicate an intention upon the part of either of the contracting parties to reserve, or to permit to be reserved, to the association the right to alter or modify the written agreement originally executed.  Nor do we find anything in this subsequent change of the by-laws which of necessity changed previously existing contracts; in fact, the statute recognizes the trustees as alone having power to enact by-laws and by its previous by-laws such trustees are prohibited from making any change affecting the rights or benefits of members.  A reading of these modifications of the by-laws would indicate that they only purport to be, and we think their only legal effect could be, to affect the relations of those contracting after their enactment.    There is nothing suggested in the nature of the amendments or modifications of these by-laws which necessarily alters the terms of the written agreement, and it is not claimed that any executed parol agreement had such effect.    The authorities cited in the appellant's brief, namely, *Supreme Council* v. *McAlarney,* 135 Fed. 72, [61 C. C. A. 546], and *Clymer* v. *Supreme Council,*

138 Fed. 470, to the effect that one contracting party must be presumed to have consented to the abrogation of the provisions in the certificate providing for the payment of a fixed sum, if no action was taken by him after notice of such change, even if accepted as correct expositions of the law, are not controlled in a case where the plaintiff had no knowledge that the defendant intended to dispute the validity or amount on maturity of his claim. In so far as any constructive notice is concerned, the notice in the statute that no by-law could be changed affecting plaintiff's rights should certainly operate as an assurance to him that changes made in such by-laws were not intended to affect his vested rights as to benefits due him from membership.

We find no error in the record, and the judgment and order are affirmed.

Gray, P. J., and Smith, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 28, 1906.